IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     v.<br><br>JOSHUA W. RODRIGUEZ,<br><br>                Defendant. | 8:15CR103<br><br>MEMORANDUM AND ORDER |

This matter is before the court on remand from the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit") for additional findings in connection with the defendant's motion to suppress, Filing No. 13. *See* Filing No. 46, Eighth Circuit Opinion. The defendant has been charged with unlawful possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2), and being an unlawful addict or user of a controlled substance in possession of a weapon in violation of § 922(g)(3).

I.     BACKGROUND

The Eighth Circuit reversed, in part, this court's suppression of evidence seized in a search of the defendant's home on December 18, 2014. The facts are set forth in the Eighth Circuit Opinion and in this court's earlier order and need not be repeated here, except as necessary to this ruling. *See* Filing No. 46, Eighth Circuit Opinion at 1-3; Filing No. 32, Memorandum and Order at 1-8.

Briefly, law enforcement officers were investigating a suspected marijuana growing operation. Thinking he did not have enough evidence for a search warrant, Nebraska State Patrol ("NSP") Narcotics Investigator Richard Lutter conducted a "knock and talk" at the defendant's house at 1915 South 8th St. in Omaha, Nebraska, on

December 18, 2014.  When the defendant opened the door, the contact officer smelled an overwhelming odor of marijuana.  They entered the defendant's house and performed a protective sweep, finding guns, paraphernalia, and several marijuana plants.  They then sought and obtained a search warrant.

This court earlier found the defendant's motion to suppress should be granted. Filing No. 32, Memorandum and Order at 25.  The government appealed and the Eighth Circuit reversed in part.  Filing No. 46, Eighth Circuit Opinion at 6-8.  The Eighth Circuit found that suppression based on the law enforcement officers' warrantless entry into the defendant's home was improper because "the officers' belief [the defendant] consented to their entry was objectively reasonable."  *Id.* at 5.  It found, however, that "a protective sweep in the absence of an arrest or reasonable suspicion of dangerous individuals was clearly illegal," and remanded for a determination of whether the independent source doctrine applies in this case.  *Id.* at 7.

"Under the independent source doctrine, the exclusionary rule is inapplicable where the evidence was acquired through a source independent of the tainted search." *Id.* (quoting *United States v. Brooks*, 715 F.3d 1069, 1075 (8th Cir. 2013)).  The Eighth Circuit stated that "[t]o determine whether a warrant including tainted information is an independent source, this court asks 'first, would the police have applied for the warrant had they not acquired the tainted information; and second, do the application affidavits support probable cause after the tainted information has been redacted from them.'" *Id.* (quoting *United States v. Swope*, 542 F.3d 609, 613 (8th Cir. 2008)).  Specifically, "[t]he

2

district court must 'explicitly find that the agents would have sought a warrant if they had not earlier' performed the unconstitutional sweep." *Id.* (quoting *Murray v. United States,* 487 U.S. 533, 542 (1988)).

This court held a hearing on the motion on October 19, 2016. The parties agree that the issue can be resolved on the record, including the warrant application and a videotape of the law enforcement encounter at the defendant's home on December 18, 2016. *See* Hearing Exhibits ("Hr'g Exs.") 1 and 2.

In his Affidavit and Application for Issuance of a Search Warrant, Investigator Lutter states he had conducted surveillance beginning in June of 2014 of the premises located at 1915 South 8th Street, Omaha, Nebraska, for the possible criminal act of manufacturing marijuana. Hr'g Ex. 1. Investigator Lutter has been employed by NSP since 1991 and has been a Narcotics Investigator since 1994. He has undergone over 900 hours of training in drug trafficking investigation and has been involved in over 1100 drug-trafficking investigations. He states that during intermittent surveillance of the premises, he observed items consistent in the manufacturing of marijuana on the property—a large number of planting pots, CO2 metal compressed air containers, and multiple large plastic barrels. As a result of his experience with the drug interdiction unit, he was aware that compressed CO2 is commonly used in the manufacturing of marijuana and that large plastic barrels are used in indoor marijuana growing operations. He was also aware that clandestine grow operations will have multiple planting pots associated with them.

Investigator Lutter was able to identify the owner of the property as Joshua W. Rodriguez. As part of his investigation, he checked defendant Rodriguez's criminal

3

history and determined that Rodriguez had prior arrests for possession of a controlled substance and for carrying a concealed weapon. He was also aware that Rodriguez has a Nebraska issued concealed carry permit.

Investigator Lutter stated in the affidavit that he had attempted to locate and examine the refuse from the residence but found that the resident guarded the material placing it out just prior to pick up or not placing anything out at all. Investigator Lutter obtained and reviewed the utilities usage records of the Rodriguez residence, along with two unrelated residences for comparison, and determined that the home's electrical usage was more than four times that of the comparison locations. He stated that he was aware that the excessive use of power is consistent with the operation of a clandestine grow operation.

Further, Investigator Lutter stated that he conducted surveillance of Rodriguez on December 10, 2014. He observed Rodriguez leaving his residence in a white Toyota, registered in his name at the 8th Street residence. Rodriguez was later stopped by NSP Trooper Prante for a traffic violation and was issued a warning. Officer Lutter noted that Rodriguez did not stop at any point until contacted by Trooper Prante. Investigator Lutter spoke to Trooper Prante at the conclusion of the traffic stop and was informed that Rodriquez had been issued a warning and the vehicle was searched due to plain odor. Trooper Prante told Investigator Lutter that he had detected the overwhelming distinct odor of raw or unburnt marijuana. He also told Investigator Lutter that no contraband was located during the search but that two weapons were found on Rodriguez.

Investigator Lutter also related in the affidavit that Trooper Prante told him the overwhelming distinct odor of marijuana quickly dissipated from the vehicle and moved with Rodriquez as Rodriquez exited the vehicle. Investigator Lutter states in the affidavit that as a result of his training and experience he was aware that locations containing indoor marijuana growing operations commonly have an overwhelming odor of marijuana on the property and people leaving the locations will carry the odor on their persons and clothing. He also related that when he contacted Rodriguez at the residence on December 18, 2014, he detected a strong odor of marijuana as the door opened.[1]

Also, this court again reviewed the videotape of the December 18, 2014, encounter. Hr'g Ex. 2. The videotape shows that after entering the defendant's home, Investigator Lutter tells the defendant that there is a strong smell of marijuana in the house. Investigator Lutter states "I have no evidence to support a charge as of right now, um, but I believe I have enough evidence to support applying for a search warrant, whether or not the Judge would grant that search warrant or not is going to be up to the Judge, it always is, but based on twenty years of experience I believe I have enough to secure a search warrant for the residence." *See* Ex. 1 at 3:55-4:15. Investigator Lutter then informs the defendant and his wife of their rights and the defendant states that he needs a lawyer. *Id.* at 4:35-6:30. Investigator Lutter then states;

> Well, what I'm going to do then is wait for these officers to come up here, we'll get everybody secured real quick and then I'm gonna take the time to apply, I'll fill out the search warrant, we'll take it down to the Judge, it's gonna be a two/two-and-a-half hour process, just so you're aware,

---

[1] The affidavit then describes the "knock and talk" and subsequent protective sweep, but the court did not consider that tainted information in making its determination.

> because finding, you know, filling out the paperwork, finding the Judge, getting it either it granted or denied, um, is the process that we have to go through. And, oh, so I'm gonna do that. I'll just, I'm gonna wait 'til they get up here so we can make that happen.

*Id.* at 6:32-7:07.

## II.   LAW

Under the independent source doctrine, the exclusionary rule is inapplicable where the evidence was acquired through a source independent of the tainted search. *Brooks,* 715 F.3d at 1075. "A warrant obtained after an illegal search is an independent source if: (1) 'police [would] have applied for the warrant had they not acquired the tainted information,' and (2) 'the application affidavits support probable cause after the tainted information has been redacted from them." *Id.* (quoting *Swope*, 542 F.3d at 613-14).

Probable cause sufficient to justify the issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *State v. Sprunger*, 811 N.W.2d 235, 242 (Neb. 2012). The strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant is evaluated under a "totality of the circumstances" test; under that test, "the question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause." *State v. Lammers*, 676 N.W.2d 716, 723 (Neb. 2004).

Proof of probable cause justifying the issuance of a search warrant generally must consist of facts so closely related to the time of issuance of the warrant as to justify a finding of probable cause at that time. *State v. Bossow*, 744 N.W.2d 43, 53

(Neb. 2008). Whether the averments in an affidavit are sufficiently timed to establish probable cause depends on the particular circumstances of the case, and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit. *Id.* Time factors must be examined in the context of a specific case and the nature of the crime under investigation. *Id.* Where the affidavit in support of a search warrant recites a mere isolated violation, it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. *Id.* However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature—a course of conduct—the passage of time becomes less significant. *Id.* A marijuana growing operation is an ongoing course of conduct for which the passage of a few months becomes less significant. *State v. Miller*, No. A-15-731, 2016 WL 304566, at *3 (Neb. Ct. App. Jan. 26, 2016). Information that establishes the defendant is the person involved with a residence under surveillance and that electrical usage is higher than comparably sized residences in the same geographical vicinity, together with stems and leaves testing positive for marijuana in a trash pull, are sufficient grounds for a finding of probable cause. *State v. Sams*, No. A-13-095, 2013 WL 5184002, at *2 (Neb. Ct. App. Sept. 17, 2013); *see also Bossow*, 744 N.W.2d at 53 (affidavit stating that three individuals had seen marijuana plants growing under heat lamps one month earlier established probable cause); *Miller,* 2016 WL 304566, at *3 (anonymous crime-stoppers tip about a grow operation coupled with surveillance, strong odor of fresh marijuana, and an informant's statement that he had purchased marijuana numerous times from the defendant established probable cause).

### III.   DISCUSSION

The court first finds that the videotape shows that the law enforcement officers involved in the investigation of the defendant would have sought a warrant if they had not earlier performed the unconstitutional sweep.  Investigator Lutter made his intent to secure a warrant clear to the defendant even before the officers found weapons, paraphernalia, dried marijuana plant material, and live marijuana plants with lighting and ventilation in the security sweep.

Further, the Court finds that the evidence set out in the Affidavit and Application for Issuance of a Search Warrant, without the evidence discovered in the protective sweep, would have been sufficient for a finding of probable cause to believe that controlled substances, records, ledgers, and other items consistent with a marijuana grow operation would be found in the residence.  Investigator Lutter's affidavit in this case included information establishing that he had conducted surveillance of the residence, had observed items consistent with a marijuana growing operation, and had identified Rodriguez as a person involved with the residence.  Investigator Lutter had also obtained records that demonstrated that the electrical usage at the subject residence was more than four times that of other comparably sized residences in the geographic vicinity.  He attested that he was aware, through experience and training, that residences containing marijuana grow operations have an increased rate of electrical consumption.

Further, Investigator Lutter's affidavit shows that Rodriguez had a criminal record that included arrests for possession of a controlled substance and for carrying a concealed weapon.  Also, the affidavit contained the information that another officer had

8

detected an overwhelming odor of raw or unburnt marijuana emanating from the defendant in a traffic stop and Investigator Lutter himself detected a strong odor of marijuana when Rodriguez opened the door of the residence.  Although the officer's observation of items consistent with a grow operation and his utility-records check predated the search warrant application by several months, a grow operation is an ongoing course of conduct and there was timely evidence—the odor or raw marijuana at the traffic stop and the overwhelming smell of marijuana emanating from the house—that suggested recent involvement.

The totality of the circumstances illustrated by the affidavit, with the evidence uncovered in the tainted protective sweep redacted, are sufficient to support a finding of probable cause.  Accordingly, as per the circuit court's instruction, the independent source doctrine applies in this case.  Because the evidence was obtained through a source independent of the tainted search, the exclusionary rule does not apply and the defendant's motion to suppress should be denied.

IT IS ORDERED that the defendant's Motion to Suppress (Filing No. 13) is denied.

Dated this 14th day of November, 2016.

> BY THE COURT:
>
> s/ Joseph F. Bataillon
> Senior United States District Judge